UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH HALL,<br><br>                     Plaintiff,<br><br>    -against-<br><br><br>DEPARTMENT OF CORRECTIONS MEDICAL DEPARTMENT, SING SING CORR. FACILITY; CENTRAL OFFICE: FELIX EZEKWE, M.D. PROVIDER, SING SING CORR. FACILITY; MS. RASIA FERDOUS, MEDICAL DIRECTOR, SING SING CORR. FACILITY; F.M.D. DANA GAGE; CENTRAL OFFICE MEDICAL DEPARTMENT,<br><br>                  Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: _7/8/2021_<br><br><br>No. 18-cv-6892 (NSR)<br>**OPINION & ORDER** |

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Keith Hall ("Plaintiff"), a *pro se* litigant incarcerated at Sing Sing Correctional Facility ("Sing Sing") and proceeding *in forma pauperis,* commenced this action by the filing of his Complaint on July 31, 2018 pursuant to 42 U.S.C. § 1983 ("Section 1983") against the New York State Department of Corrections and Community Supervision Central Office Medical Department ("Central Office Medical Department"), the Medical Department at Sing Sing Correctional Facility ("Sing Sing Medical Department"), Dr. Felix Ezekwe, Medical Provider at Sing Sing ("Ezekwe"), Ms. Rasia Ferdous, Medical Director at Sing Sing ("Ferdous"), and F.M.D. Dana Gage, Central Office Medical Department ("Gage"). (*See* ECF No. 2.) Plaintiff alleges violations of his rights under the Eighth Amendment to the United States Constitution arising from Defendants' failure to provide adequate medical care for a condition involving Plaintiff's prosthetic eye. Presently before the Court is the motion of remaining defendants Ezekwe, Ferdous, and Gage (collectively, "Defendants") to dismiss the Amended Complaint pursuant to Federal

Rules of Civil Procedure 12(b)(6). (ECF No. 33.) Plaintiff did not submit any opposition to the motion. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's Amended Complaint is dismissed *without prejudice*.

## BACKGROUND

### I.      Factual Allegations

The following facts are derived from the Amended Complaint or matters of which the Court may take judicial notice, are taken as true, and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff is a prisoner in the custody of the New York State Department of Corrections and at all relevant times was incarcerated at Sing Sing Correctional Facility. (Amended Complaint ("Am. Compl.") (ECF No. 28) at 6.))[1] During his incarceration, Plaintiff was afflicted with eye-related health issues which necessitated the installation of a prosthetic left eye in or around 2006. (*Id.* at 14.) The installation of the prosthesis did not end his troubles as it proved to be ill-fitting and, in or around 2011, non-party Dr. Samuel Wright recommended that a new custom prosthesis be fashioned and installed in order to maintain the integrity of Plaintiff's eye-socket. (*Id.* at 16-17.) Ultimately, Plaintiff suffered discomfort in, and discharge from, his eye for approximately nine years (*i.e.*, from 2006 through 2015) due to the poorly fitting prosthesis. (*Id.* at 10.) Discomfort notwithstanding, there is no record or allegation of Plaintiff complaining to any medical staff regarding these issues between April 2011 and October 2015.

---

[1] Numbers cited in reference to Am. Compl. refer to page numbers. The Am. Compl. contains and incorporates various forms of documentary evidence that are also cited herein as Am. Compl.

On November 10, 2015, Plaintiff allegedly told Defendant Ezekwe—one of his medical providers at Sing Sing—that his prosthetic eye was ill-fitting, his eye-socket produced discharge and secretions, and his prosthetic eye would fall out at night while he slept. (*Id.* at 7-8.) Moreover, he explained to Ezekwe that he frequently had to reposition his prosthetic eye and carry tissues to clean the discharge from the same eye-socket. (*Id.*) On November 25, 2015,[2] after being apprised of Plaintiff's symptoms, Ezekwe referred Plaintiff to nonparty Dr. Wandeb Charles at the Ophthalmology Department at Fishkill Correctional Facility. (*Id.*)

On December 3, 2015, during an appointment with Dr. Charles and nonparty Dr. John G. Bortz, surgery was recommended to remedy Plaintiff's eye socket problems. (*Id.*) Plaintiff's allegation regarding the timing of the surgery is reinforced by a Consultant report dated December 3, 2015 and incorporated into Plaintiff's Am. Compl. which notes that Dr. Bortz recommended "Oculoplastics for new prosthesis." (*Id.* at 13 (emphasis in original).) In other words, Dr. Bortz recommended ocular surgery to enable the installation of a better fitting prosthetic eye. Notably, there is also a blank field on the form wherein the consultant (*i.e.*, Dr. Bortz) was directed to enter the recommended date for any follow up procedure. (*See id.*) Dr. Bortz failed to include any timeframe in which ocular surgery was to take place. (*Id.*)

Though Plaintiff does not explicitly say so, it appears that he visited with Dr. Bortz again on August 5, 2016. (*Id.* at 8–9.) On that date, Dr. Bortz told Plaintiff that he had a collapsed eye socket with chronic anophthalmic conjunctivitis and discharge due to an excessive superior forniceal recess. (*Id.*) Dr. Bortz recommended that a metal plate be installed under Plaintiff's eye socket along the orbital floor to fill the collapsed area. (*Id.*) On August 7, 2016, Dr. Bortz sent

---

[2] Plaintiff alleges that Ezekwe referred Plaintiff on November 25, 2015, however, the consultant report dated December 3, 2015 lists November 10, 2015 as the referral date. (Am. Compl. at 13.) The distinction is of no difference to the resolution of the instant motion.

Ezekwe and Ferdous his recommendation for ocular surgery, *i.e.*, that a procedure be performed installing "an enophthalmos implant along [Plaintiff's] orbital floor in an attempt to decrease[] the dead space in his superior forniceal recess, and possibly improve the deepening of the left superior sulcus." (Am. Compl. at 14.)

Sometime later, on an indeterminate date, the "Central Office Medical Department" deferred the recommended procedure. (*Id.*) Plaintiff found out about the deferral on August 7, 2017, at which point he filed a grievance, which he reports he exhausted. (*Id.* at 7–8.) Almost two months later, on September 27, 2017, Sing Sing Correctional Facility issued a denial of Plaintiff's grievance signed by non-party Superintendent Michael Capra. (*Id.* at 15.)

Between August 2016 and May 2018, Ferdous and Ezekwe allegedly "stood silent and did not let Albany or the Regional Director of Medical know there [sic] denial and defer[ral] was wrong" and that they "denied [his] surgery by staying silent and not remedy[ing] the wrong." (*Id.* at 18–19.) Likewise, neither Ferdous nor Ezekwe acted to expedite the recommended ocular surgery after Plaintiff's grievance was denied. (*Id.* at 20.) Plaintiff submits that this failure to expedite his surgery was consequential because, as doctors, Defendants Ferdous and Ezekwe "should have known [that] a collapse[d] eye socket is very seriouse [sic]," and "when the orbital ball was sinking needless or mild pain my eye situation was very seriouse [sic] and discomfort [twenty-four] hours a day, sticky discharge coming out." (*Id.* at 19.) Plaintiff ultimately underwent surgery with Dr. Bortz on May 16, 2018 at the Westchester Medical Center in Valhalla, N.Y. (*Id.* at 9.)

Less than one year after the initial surgery was performed, sometime between January and February 2019, Plaintiff went to see Dr. Bortz who informed him that a second surgery was needed due to the initial "delay to get surgery" on Plaintiff's left eye. (*Id.* at 5.) As a result of the delayed

surgery, Plaintiff states: "the orbital ball has sunken deeper causing my eye lid to become weak and not go all the way above my eye ball like a normal eye lid. The [second] surgery would fix the eye lid muscle to go up and down normally." (*Id.*) Dr. Bortz performed a second surgery to repair Plaintiff's eye lid sometime afterwards in 2019. (*Id.*)

After Plaintiff received one of the two surgeries, Dr. Bortz ordered Plaintiff a special eye patch. (*Id.* at 21.) Although it was supposed to arrive one-week later, it took the Medical Department four months to get the eye patch. (*Id.*) It appears that in the interim, Plaintiff received a temporary "flat" eye patch which stuck to Plaintiff's eye ball and caused him pain and swelling in his eye for four months and each time the nurse changed the patch and cleaned his eye. (*Id.* at 22–23.) As a result, Plaintiff stopped wearing the flat eye patch because he feared that infection would set in. (*Id.*) Plaintiff states that he walked around the prison for four months with no eye patch. (*Id.* at 23.) During this time, he repeatedly asked Ezekwe for the eye patch and was told it was being ordered. (*Id.*)

## II.    Procedural History

Plaintiff Keith Hall filed his Complaint on July 31, 2018 against the Central Office Medical Department, the Sing Sing Medical Department, Ezekwe, Ferdous, and Gage. (*See* ECF No. 2.) By Order dated November 2, 2018, the Court, sua sponte, dismissed all claims against the Central Office Medical Department and the Sing Sing Medical Department on Eleventh Amendment grounds holding that "it is well-settled that the Eleventh Amendment bars claims for monetary damages against state officials acting in their official capacities." (ECF No. 6.)

Subsequently, by Opinion & Order dated July 21, 2020, the Court dismissed Plaintiff's claims against Defendants in their official capacities with prejudice and dismissed Plaintiff's claims against Defendants in their individual capacities without prejudice and with leave to replead. (Opinion & Order dated July 21, 2020 ("Opinion") (ECF No. 24).) Plaintiff filed his

Amended Complaint on August 20, 2020. Presently before the Court is the motion of Defendants to dismiss the remaining claims against them in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 33.) Plaintiff does not oppose the motion. This Opinion follows.

## LEGAL STANDARD

### I.        Fed. R. Civ. P. 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be

interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II.        42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Read liberally, Plaintiff's Amended Complaint asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by delaying Plaintiff's eye socket surgery for an extensive period of time resulting in a worsening of his underlying eye socket deformity. Though Plaintiff did not submit any opposition to the instant motion, it appears from his Amended Complaint that he is advancing a theory that the delay in his surgery constituted deliberate indifference to his serious medical needs. Defendants aver that Plaintiff's claims must be dismissed because (1) Plaintiff's allegations about a delay in treatment do not amount to actionable medical indifference; (2) Plaintiff does not sufficiently plead that any of the Defendants

were personally involved in deferring treatment; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's affirmative abandonment of claims against Gage warrant dismissal. The Court addresses each argument in turn.

I.       **Eighth Amendment Claim**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Therefore, the Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The right emanates from the basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense. *Roper*, 543 U.S. at 560 (citations and internal quotations omitted). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Id.*

In order to assert an Eighth Amendment claim for medical indifference, a plaintiff must plausibly allege that a defendant acted with "deliberate indifference to serious medical needs." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle*, 429 U.S. at 103); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). It is well-established that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, [and that] not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003); *see Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Salahuddin v. Goord*, 467 F.3d 279 (2d Cir. 2006) (internal quotations omitted).

Medical indifference claims under the Eighth Amendment of the U.S. Constitution and Section 1983 require courts to engage in a two-part inquiry, one objective and the other subjective. The objective inquiry focuses on the effect of a defendant's conduct and the subjective inquiry focuses on the defendant's motive. *Chance*, 143 F.3d at 702. "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id*.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." *Id*. at 279–80 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Accordingly, prison officials fulfill their obligations when the care provided is "reasonable." *Id*. at 280. If the care provided is unreasonable, a second inquiry is needed and courts ask "whether the inadequacy in medical care is sufficiently serious." *Id*.

If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id*. In general, a "sufficiently serious" medical need is a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Moreover, a "sufficiently serious" deprivation occurs when "a prison official's act[] or omission . . . result[s] in the denial of 'the minimal civilized measures of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

If the offending conduct is the "medical treatment given," however, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. When "the prisoner is receiving appropriate on-

going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." *Smith*, 316 F.3d at 186; *see Sledge v. Fein*, No. 11-CV- 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) ("[I]n cases of delayed or inadequate care, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant . . . .'") (quoting *Smith*, 316 F.3d at 186); *see also Bellotto v. Cnty. of Orange*, 248 Fed. App'x 232, 236 (2d Cir. 2007) ("When a prisoner alleges denial of adequate medical care, we evaluate the seriousness of the prisoner's underlying medical condition. When a prisoner alleges 'a temporary delay or interruption in the provision of otherwise adequate medical treatment,' we focus on the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'") (quoting *Smith*, 316 F.3d at 185) (internal citation omitted).

As to the subjective prong, a prison official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety. . ." *Chance*, 143 F.3d at 702 (citing *Farmer*, 511 U.S. at 837); *see Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference."). Additionally, "deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 834.

For the reasons that follow, the Court determines that Plaintiff has adequately pleaded an objectively serious harm but has not adequately pleaded subjective intent.

A.     *Objective Harm*

Defendant moves to dismiss on the ground that objective harm has not been sufficiently alleged in the Amended Complaint because Plaintiff has not alleged a sufficiently serious medical condition that was life threatening, or that worsened because of the alleged delay, or that the delay was punitive. Though Plaintiff failed to submit opposition papers, the Court disagrees with Defendants as the Amended Complaint alleges the existence of a sufficiently serious degenerative condition.

As discussed in this Court's previous Opinion, the gravamen of Plaintiff's initial Complaint was that adequate treatment was ultimately provided when he received a surgery on or around May 16, 2018, but it was unreasonably delayed considering that the initial recommendation for surgery was made on December 3, 2015, and Defendant Ezekwe was made aware of this recommendation no later than August 7, 2016. (*See* Opinion at 8.) The Court previously held that Plaintiff's delay in treatment claim failed because he made no allegation that "his condition was life-threatening and fast degenerating, that it worsened because of the delay, or that the delay was punitive." (*See* Opinion at 9.) Plaintiff's failure to plead any allegations relating to, *inter alia*, the worsening of his condition, was dispositive because, courts typically find that a sufficiently serious objective harm exists where a plaintiff alleges that he suffered from a degenerative condition as a result of a delay in medical treatment, or the worsening of an existing medical condition. *See, e.g.*, *Chance*, 143 F.3d at 698 (2d Cir. 1998) (reversing a motion to dismiss where a plaintiff alleged at least one and possibly three of his teeth degenerated to the point of requiring extraction due to a one year and three month delay in filling plaintiff's cavities); *c.f. Samuels v. Jackson*, No. 97 CIV. 2420

(MBM), 1999 WL 92617 (S.D.N.Y. Feb. 22, 1999) (dismissing a complaint where a plaintiff did not allege chronic and substantial pain, deterioration, or permanent injury).

Plaintiff's Amended Complaint now directly asserts that the decision to delay his ocular surgery by, at a minimum, 20 months "caused the orbital ball to sink deeper which caused [his] left eye lid muscle to become weaker and not be able to go fully above [his] eye ball like a normal person [sic] eye lid." (Am. Compl. at 22.) As a result of the worsening of his condition, a second surgery was necessitated and eventually performed in 2019 by Dr. Bortz. (*Id.*) On the basis of these new allegations (which Defendants ignore) the Court easily finds that Plaintiff has adequately alleged a degenerative condition that worsened as a result of the delay in treatment. *See Snyder v. Alam*, No. 15 CV 4033 (VB), 2016 WL 2642226 (S.D.N.Y. May 6, 2016) (holding that a plaintiff who alleged permanent swelling of his foot and leg due to a delay in hospitalization and surgery adequately satisfied the objective prong of deliberate indifference). Accordingly, Plaintiff has plausibly asserted that the alleged delay in his surgical treatment was serious enough to violate Plaintiff's constitutional rights.

B.      *Subjective Intent*

Defendants argue that Plaintiff failed to allege facts showing that Defendants had the requisite culpable state of mind. They assert the very fact that Defendants referred Plaintiff to a specialist who operated on Plaintiff's eye negates the claim that Defendants were deliberately indifferent. Moreover, Defendants argue that Plaintiff was not denied medical treatment entirely; but rather that his surgery was merely delayed. The Court concludes that Plaintiff failed to plausibly state an Eighth Amendment claim because he did not present any facts tending to support an inference of deliberate indifference on the part of Defendants.

In order to adequately plead subjective intent, a Plaintiff must allege that defendants "know of and disregard[] an excessive risk to inmate health." *Farmer*, 511 U.S. at 837; *see also James v.*

*Correct Care Sols.*, No. 13-CV-0019(NSR), 2013 WL 5730176, at *6–7 (S.D.N.Y. Oct. 21, 2013) (noting that deliberate indifference requires more than allegations about a delay in treatment). By contrast, "mere negligence" does not suffice to allege deliberate indifference. *See Farmer*, 511 U.S. at 834; *see also Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that a plaintiff might conceivably show medical malpractice but fails to satisfy the subjective prong of an Eighth Amendment claim where he alleged that the nurses and doctor misdiagnosed his injuries, and failed to recognize the severity of those injuries); *c.f. Chance*, 143 F.3d at 702 (sufficiently culpable mental state existed where defendant-doctors recommended extraction of plaintiff-inmate's teeth not on the basis of their medical views, but because of monetary incentives). As in the instant case, where a party alleges that a delay in treatment, subjective intent is not satisfied unless Plaintiff further alleges that the delay was "either intentional or reckless." *Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (dismissal proper in absence of allegations that "the delay was either intentional or reckless"). At bottom, a misdiagnosis or failure to apprehend the urgency of a medical intervention is tantamount to mere negligence, and is not actionable. *See Hogan v. Russ*, 890 F. Supp. 146 (N.D.N.Y. 1995) (holding that where a plaintiff's only allegation is that the defendant-doctor made a wrongful diagnosis and recommendation, defendant's actions fail to constitute deliberate indifference and at best, would rise only to the level of negligence); *see also Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333 (E.D.N.Y. 2003) (noting that a "medical decision not to order an [x]-ray, or like measures does not represent cruel and unusual punishment. At most it is medical malpractice . . .") (quoting *Estelle*, 429 U.S. at 107).

Here, Plaintiff does not contend that he complained to any of the Defendants about any adverse medical effects from the delay of his surgery or that Defendants ignored his complaints. Indeed, the only Defendant Plaintiff specifically alleges even knew about his underlying medical

complaints is Ezekwe. Plaintiff states that Ezekwe referred him to an ophthalmologist within a month of his examination of Plaintiff, that Dr. Bortz sent his recommendations to Ezekwe and Ferdous, and that Ezekwe later advised Plaintiff that his surgery had been deferred. (*Id.* at 7–8.) Plaintiff further alleges that Ezekwe and Ferdous "should of [sic] known" the seriousness of his medical condition based on their medical training. (*Id.* at 18.) Plaintiff's allegations and exhibits show that Ferdous and Ezekwe knew that Plaintiff was recommended for surgery, that Central Office Medical Department deferred the surgery, and that the superintendent at Sing Sing Correctional Facility denied Plaintiff's grievance.

Defendants' actions, standing alone, do not evince a disregard of a substantial risk to Plaintiff's health or safety. Instead, at best, it indicates that Ezekwe and Ferdous *should have* known (but did not know) there was a substantial risk to Plaintiff's health based on the Dr. Bortz's recommendation that Plaintiff receive an ocular surgery. At bottom, Plaintiff alleged that Defendants failed to properly diagnose him or appreciate the urgency of the recommended medical intervention. Without more suggesting that Defendants were aware of necessity and urgency of ocular surgery, Plaintiff has alleged no more than mere negligence, which may be actionable in a medical malpractice claim but is insufficient to give rise to an Eighth Amendment claim.

If Plaintiff was a pretrial detainee under the Fourteenth Amendment's Due Process Clause, he likely would have satisfied deliberate indifference as pretrial detainees need only show that a defendant "should have known," that a condition posed an "excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). However, as described above, the deliberate indifference standard for an inmate under the Eighth Amendment's Cruel and Unusual Punishment's Clause is the defendant "knows of and disregards an excessive risk to inmate health or safety." *James*, 2013 WL 5730176, at *6–7. Thus, while the Fourteenth Amendment's

deliberate indifference standard includes an objective component, the Eighth Amendment's deliberate indifference standard is purely subjective. *Darnell*, 849 F.3d at 37. Accordingly, it is irrelevant whether Ferdous or Ezkwe "should [have] known" that Plaintiff's condition was serious or that surgery was urgent; it is only relevant whether Ferdous or Ezkwe actually knew and disregarded such information. Plaintiff does not allege that Defendants had actual knowledge and consequently fails to allege deliberate indifference.

*    *    *

Although Plaintiff has alleged objective harm, his Eighth Amendment claim against Defendants fails because he failed to adequately plead subjective intent. Accordingly, his Eighth Amendment claims are dismissed without prejudice. To the extent that Plaintiff can provide factual allegations curing the foregoing deficiencies, Plaintiff is granted leave to replead his claim. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain must be included in the amended complaint.

**II.        Personal Involvement**

Defendants argue that Plaintiff's Eighth Amendment claim fails for the additional reason that Plaintiff did not allege personal involvement on the part of any Defendant in the decision to defer his surgery. The Court agrees.

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133,

138–39 (2d Cir. 2013). Personal involvement of a supervisory defendant may be shown by evidence of any of the following factors (the "*Colon* factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Notably, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983. *Faulk v. N.Y.C. Dep't of Cor.*, No. 08-CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").

Here, Plaintiff repeatedly claims that "Medical Central Office" was responsible for the determination to defer Plaintiff's surgical procedure. (Am. Compl. at 7–10.) As previously discussed, Plaintiff does not describe any actions at all taken by Defendants Ferdous and Gage with respect to deferring the surgery, and only states that Defendant Ezekwe referred him to an ophthalmologist and passed on information about the surgery deferral to Plaintiff. Nor does Plaintiff describe any actions taken by Defendants Ferdous or Ezekwe with respect to the grievance denial. Instead, Plaintiff affirmatively alleges that Defendants did not engage in any actions related to the denial of his grievance—*i.e.*, he alleges that Defendants "stood silent" and did not do anything to "remedy the wrong" after his grievance was denied by the superintendent. (*Id.* at 18–19.) At best, Plaintiff alleges that Defendants Ferdous and Ezekwe could have engaged in actions to expedite his surgery. However, such allegations are insufficient to plausibly allege personal

involvement. *See Benjamin v. Schwartz*, 299 F. Supp. 2d 196 (S.D.N.Y. 2004) (holding that medical director was not personally involved in complained-of constitutional violation where the only allegation against him was that he "could have" intervened to encourage subordinate doctor to expedite plaintiff's surgery because he was the doctor's supervisor), *aff'd sub nom. Benjamin v. Koeningsmann*, 204 F.App'x 979 (2d Cir. 2006).

Accordingly, the facts are far from sufficient to support Defendants' personal involvement in a constitutional deprivation. Even if Plaintiff had adequately pleaded a constitutional violation, the Complaint would have to be dismissed on this additional ground. Should Plaintiff elect to file an amended complaint, this deficiency must be cured.

**III.     Qualified Immunity**

Defendants argue in the alternative that Plaintiff's Eighth Amendment claim must be dismissed based on the defense of qualified immunity. Because the Court has dismissed the Eighth Amendment claim as insufficiently pleaded on the grounds described above, it declines to address Defendants' qualified immunity defense at this juncture.

**IV.     Abandoned Claims**

Lastly, Defendants argue that Plaintiff's claim against Gage should be dismissed as abandoned. Where a plaintiff "fail[s] to address Defendants' arguments in support of dismissing [a] claim, it is deemed withdrawn or dismissed as abandoned." *See Baptiste v. Griffin*, No. 18 CV 7274 (NSR), 2019 WL 5635808, at *5 (S.D.N.Y. Oct. 31, 2019) (quoting *Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017)). Here, Plaintiff expressly and affirmatively states in his Amended Complaint that he no longer wishes to pursue charges against Defendant Gage who he claims was only minimally involved: "I'm asking to dismiss my claim against Dana Gage she only play[ed] a small role and I no longer want her in

this complaint." (Am. Compl. at 22.) Accordingly, the Court dismisses all claims with prejudice against Defendant Gage as abandoned.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims against Defendant Gage are dismissed with prejudice. Plaintiff's claims against Defendants Ferdous and Ezekwe are dismissed without prejudice and with leave to replead. Plaintiff may file an Amended Complaint consistent with this Opinion on or before August 19, 2021. An Amended Civil Rights Complaint form is attached to this Order. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice.

The Clerk of the Court is respectfully directed to terminate the Motion at ECF No. 33. The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and show proof of service on the docket.


Dated:   July 8, 2021                                    SO ORDERED:
         White Plains, New York

                                          _____
                                                 NELSON S. ROMÁN
                                               United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

## COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes     ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                          Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City            State          Zip Code

Defendant 2:

First Name            Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City             State          Zip Code

Defendant 3:

First Name            Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City             State          Zip Code

Defendant 4:

First Name            Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City             State          Zip Code

## V.  STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____